# In the United States Court of Federal Claims

NOT FOR PUBLICATION
No. 08-464C

(Filed March 7, 2013)

FILED

MAR  7 2013

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * * * *   *
MARIA SANDRA FERNANDEZ                      *
de IGLESIAS, PRO SE                         *
                                            *
            Plaintiff,                      *
                                            *
     v.                                     *
                                            *
THE UNITED STATES,                          *
                                            *
            Defendant.                      *
* * * * * * * * * * * * * * * * * * * * * * * * * *   *
```

*Maria Sandra Fernandez de* Iglesias, pro se, El Paso, Texas.

*Antonia Ramos Soares*, U.S. Department of Justice, Civil Division Comm. Lit., with whom was *Acting Assistant Attorney General Stuart F. Delery*, for defendant. *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, and *Luisa Alvarez*, Attorney-Advisor, Department of State, of Counsel.

## OPINION AND ORDER

*Futey*, Judge.

This case comes before the Court on the Government's Motion for Summary Judgment. Originally filed with this Court in 2008, this case has a long procedural history and relates to a contract for a lease obtained by the United States Department of State for a property in Juarez, Mexico. The Court resolved many of the case's issues in its opinion of December 22, 2010, in response to the Government's motion for partial summary judgment. *See Fernandez de Iglesias v. United States*, 96 Fed. Cl. 352 (2010). That decision left three remaining issues in the case: 1) the Government's liability for any holdover period, 2) liability for utilities, and 3) whether a single, ten percent increase in the amount of rent was warranted, in accordance with general principles of law. The Government filed its motion for summary judgment on September 26, 2012, and plaintiff responded on February 4, 2013. The Government filed its reply on March 5, 2013.

## I.     Background[1]

Plaintiff's claims stem from the lease of a residence in Juarez, Mexico for use by personnel of the United States Consulate in Ciudad Juarez. The lease provided for a monthly rent of $1,800 and stated that "[t]he terms of this lease shall be construed in accordance with the local laws governing the site of the premises leased hereunder." Compl. Ex. 1, Art. 16. The leased property is located in the State of Chihuahua, Mexico, and governed by the Civil Code of Chihuahua. The lease originally provided for a term of three years, beginning November 1, 1997 and ending October 31, 2000, and an option to renew the lease "for 2 further periods of 3 years, provided that written notice is given to the LANDLORD at least 30 days prior to the date this Lease or any extension of it would otherwise expire." *Id.* at Ex. 1, Art. 4. The United States exercised the renewal option on November 28, 2000, renewing the lease through October 31, 2003, and again on January 9, 2004, from November 1, 2003 through February 29, 2004. *Id.* at Ex. 2, 3. The Government asserts that it attempted to renew the lease a third time for a 46-day period from February 29, 2004 through April 15, 2004, and never obtained Ms. Iglesias's consent, and it vacated the property on April 15, 2004. *See id.* at Ex. 4.

Ms. Iglesias submitted a certified claim to the contracting officer pursuant to the Contract Disputes Act ("CDA") in August 2004 seeking one year's rent, and received no reply. *Id.* at Ex. 7. Three years later, in August 2007, plaintiff submitted another claim, this time seeking $613,672.07, including $5,231 in unpaid utilities. *Id.* at Ex. 12. The contracting officer denied all but $11,426.31 of Ms. Iglesias's claim, which was for the unpaid rent from the period of November 1, 2003 through April 15, 2004 with CDA interest. *Id.* at Ex. 13. With regard to the unpaid utilities, the contracting officer found that Ms. Iglesias had not provided adequate documentation substantiating her claim. *Id.* Ms. Iglesias received a check for $11,426.31 and the keys and garage door opener to her property on October 16, 2007.

On June 25, 2008, Ms. Iglesias filed her action in this Court, seeking $613,627.07 in damages. Plaintiff was represented by attorney Michael Cohen, but on July 13, 2011, the Court allowed Mr. Cohen's Motion to Withdraw as attorney of record, and allowed plaintiff's husband, Arturo Iglesias to represent plaintiff *pro se*. As described above, many of the issues in this case have been resolved, leaving only the resolution of holdover liability, utilities, and a single ten percent increase in the rent.

---

[1] The facts were discussed in detail in the Court's Opinion and Order granting in part defendant's motion for partial summary judgment, Opinion & Order, December 22, 2010, ECF No. 88. Undisputed factual assertions are repeated herein and supplemented where necessary to provide factual information pertinent to this Opinion.

## II. Discussion

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* U.S. Court of Federal Claims Rule ("RCFC") 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* at 248. However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000). The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Ind. Co.*, 475 U.S. at 587. In the case of *pro se* litigants, courts allow more latitude in pleadings, which are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Pursuant to RCFC 44.1, the Court considers foreign law as a ruling on a question of law. The rule allows the Court to consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." RCFC 44.1.

### A. Government's Holdover Liability

While the Government originally contested the claim, it now concedes liability for plaintiff's claim for base rent from the end of the lease term on February 29, 2004 through October 16, 2007, when the Government returned the keys to the property to Mrs. Iglesias. Def.'s Mot. for Summ. J. ("Def.'s Mot.")10. In admitting liability, defendant's expert, Professor Leonel Pereznieto-Castro, states that by retaining possession of the keys, the Government retained possession of the property through October 16, 2007. *Id.* at 11. In order to turn over possession, the Government should have deposited the keys in a local Mexican court, or had a public notary prepare a certified statement that the landlord refused to take possession. *Id.* at 12. Professor Pereznieto also explains that Articles 2387, 2388 and 2383 of the Civil Code of Chihuahua are relevant in this case, because upon the expiration of the lease, the lease was transformed into an indefinite term lease, or *tacita reconduccion. Id.* at 13. The relevant articles provide:

> *Article 2387*: In the case of a rural property, if after the time period for which the rental agreement was concluded and/or an extension was granted, the tenant continues, unopposed, in the use and enjoyment of the property rented, the rental term shall continue for one additional year.

3

*Article 2388*: In the case of the above article, where an urban property is being rented, the rental shall continue for an indefinite period of time, the tenant shall pay the rent corresponding to the additional time at the rate agreed upon in the contract, and either of the parties may request termination of the rental arrangement using the procedure indicated in the second paragraph of Article 2383.

*Article 2383*: A rental arrangement made for a definite period of time ends on the [pre-established date], except as provided for in the following three articles. If the contract was concluded for an indefinite period of time, it shall end at the discretion of the parties, on the condition that one party clearly so notifies the other party at least two months in advance in the case of urban land and one year in advance in the case of rural land.

*Id.* at Ex. C, A45-46. Defendant thus argues that upon the expiration of the lease in February 2004, its continued possession of the premises turned the lease into a lease for an indefinite term, which may have ended had the Government provided Ms. Iglesias two months' notice and returned the keys and garage opener to her. *Id.* at 13. Since it did not take these actions, it remained in possession of the property, and is liable for rent during its possession.

Plaintiff agrees with defendant that she is entitled to judgment as a matter of law on her claim for the holdover period, yet still spends much of her response brief refuting Professor Pereznieto's discussion of *tacita reconduccion* and arguing that in spite of the extensive discovery already allowed, she needs more time to properly respond to defendant's motion.[2] Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") 2-3, 10-16. Defendant's expert, attorney Juan Sebastian Argomedo Ruiz de Velasco, agrees with Professor Pereznieto that the Government remained in possession of the property despite the fact that it should have vacated the property by March 1, 2004 when the lease expired. *Id.* at Ex. A, A2. Mr. Argomedo's opinion differs, however, in that he argues Articles 2387, 2388 or 2383 cannot apply here because the tenant did not continue *unopposed* in its use and enjoyment of the property, but rather that Ms. Iglesias clearly opposed the continued residency, and no further payments were ever made to support an indefinite term lease. *Id.* at A2-A4. Therefore *tacita reconduccion* is not applicable, and no indefinite lease was formed. *Id.*

---

[2] For example, plaintiff argues that Professor Pereznieto stresses the fact that the Government was not current in its rent in denying the application of Article 2484 to increase the rent, but overlooks that rent was not paid in converting the lease into an indefinite term lease (*tacita reconduccion*). Pl.'s Resp. to Def.'s Mot. for Summ. J. 11. Plaintiff's *pro se* response continues in this fashion, contesting various statements made by defendant's expert, and includes an exhibit of "Plaintiff's List of Disputed Facts in Prof. Pereznieto's Expert Testimony." *See id.* at Ex. C.

4

The Court does not address whether or not an indefinite term lease was formed because it is not necessary here. In admitting liability for the holdover period, the Government concedes that Ms. Iglesias is entitled to judgment as a matter of law for her claim of rent through October 16, 2007. Since plaintiff already received a check for the portion of the rent from November 2003 through April 15, 2004, the rent should be calculated based on the period from April 15, 2004 through October 16, 2007, or forty-two months' time, plus interest under the CDA. At the base rent of $1,800, plaintiff is entitled to $75,600.

B. Utilities

Defendant argues that it is entitled to summary judgment on the issue of utilities, because plaintiff has failed to provide any support for her $5,231 utilities claim for the holdover period. Def.'s Mot. 13-17 While plaintiff's complaint seeks $5,231 in unpaid utilities, her note to her former attorney, Mr. Cohen, lists amounts totaling $4,461, and includes no invoices or documentation showing payments made to the various utility services. Def.'s Mot. 16 & Ex. G. The only evidence of utility bills are July and August 2004 gas bills totaling 159 pesos, a water bill from July 2004 for 760 pesos, and telephone bills from June, July, and August 2004 totaling 4,615 pesos. *Id.* at Ex. H, A81-86. The Government has sought documentation regarding utilities claims in its interrogatories, as well as via telephone in settlement talks. Def.'s Mot. 15-16. Plaintiff argues that defendant has not complied with its requests for utility bills. Pl.'s Resp. 21. The Government maintains that since it vacated the premises on April 15, 2004, it received no utility bills after that date. Def.'s Mot. 16.

Since plaintiff has at least produced some utility bills accrued during the holdover period, summary judgment for the Government is not proper, and plaintiff is entitled to damages in this amount. According to the terms of the lease, the "LANDLORD shall furnish or otherwise provide to the TENANT . . . [w]ater, power, gas, sewage disposal and telephone service. The TENANT will be financially responsible for the on-going payment of consumption charges for these services." Compl. Ex. 1. at Art. 7. The bills provided show services charged to the address within the time period of the Government's holdover period. The Government is correct, however, with respect to Ms. Iglesias's claim for utilities in excess of the documented amount, as she does not establish a genuine dispute of material fact as to those utility payments, and plaintiff bears the burden of proof in establishing damages. Therefore, it is proper to grant judgment for Ms. Iglesias, but only with respect to the utilities supported by documentation in the record for 5,534 pesos (159 pesos for July and August 2004 gas bills, 760 pesos for July 2004 water bill, and 4,615 pesos for June, July, and August telephone bills). Using exchange rates from the dates of the bill invoices, 5,534 pesos converts to $485.59.[3]

---

[3] *See* http://www.oanda.com/currency/converter.

## C. Single, Ten Percent Increase Pursuant To General Principles of Law

In its opinion on defendant's 2010 motion for partial summary judgment, the Court indicated it may be appropriate for a single, ten percent increase in the amount of rent for the holdover period. *See Fernandez v. United States*, 96 Fed. Cl. at 360. Defendant's expert maintains that under Mexican law, such an increase is not warranted. Def.'s Mot. 17. In its previous decision, the Court examined Article 2384 of the Civil Code of Chihuahua and determined that its elements were not met in order to statutorily extend the lease and trigger the right to increase rent by ten percent. *Fernandez*, 96 Fed. Cl. at 358. The relevant article provides:

> In the case of rental of real property for a definite period of time, a tenant who is current in his payment of rent shall have the right, if he so requests prior to the end of the stipulated time period, to have his rental period extended for a term equal to that of the contract but not exceeding one year. In this case, the landlord may increase the amount of the rental payment up to ten percent provided that said amount was not increased in the previous three months. An owner who wishes to inhabit the house or work the land for which the rental term has ended shall be exempt from the requirement to honor the aforementioned right.

Def.'s Mot. Ex. C at A45. While the parties agree that this Article is not directly relevant, plaintiff claims that in the absence of law governing this case, it should be applied by analogy pursuant to general principles of law. Pl.'s Resp. Ex. A at A8. Article 18 of the Civil Code of Chihuahua provides that "[i]n the absence of law, [civil court disputes] shall be resolved using general principles of law." Def.'s Mot. 19; *see also* Pl.'s Resp. Ex. A at A9. The Article continues "[t]he usages and customs of the place may also be applicable in a supplementary manner, when the law, the will of the parties, or the circumstances of the case, allows them." Pl.'s Resp. Ex. A at A9. Defendant asserts that this case does not have an "absence of law" such that general principles of law may be considered. Def.'s Mot. 19-20. Rather, Articles 2387 and 2388 are directly applicable in this matter. *Id.* at 20.

Plaintiff through its own expert counters that Articles 2387, 2388, 2383, and 2384 are not applicable to this case, because the conditions are not met for an indefinite term lease. Pl.'s Resp. Ex. A at A3, A8. Instead, "[t]he case is not one foreseen by the law[]" and Article 2384 should apply by analogy because "the same elements [at the] core of this provision apply here." *Id.* at A8. The essence of plaintiff's argument is that resort to Article 2384 is proper because the same situation contemplated by that statute applies here: a landlord who cannot recover her property from a tenant, and who should be compensated for a mandatory extension of a lease. Yet plaintiff's argument continues too far, past the point the Court already determined – that multiple ten percent increases were not warranted.

6

Plaintiff's expert asserts that Ms. Iglesias is entitled to a ten percent compensation *for every time she would have received the return of her property and did not. Id.* at A13 (emphasis added). Since the Government's last valid request to extend the agreement was for four months, plaintiff's expert insists that this means the agreement should be deemed extended every four months, providing a ten percent increase each time. *Id.*

Regardless of whether or not *tacita reconduccion* applies, the Court finds that the circumstances of this case allow Article 2384 to apply in a supplementary manner, and a single ten percent adjustment is appropriate. While there is not an "absence of law" in this case, Article 18 still provides for consideration of usages and customs as warranted by the circumstances of a particular case, and the same interest in compensating a landlord for a lease which has become involuntarily extended applies in this situation. Therefore, judgment for plaintiff is proper with regard to a ten percent increase in the base rent.

III.    Conclusion

Defendant's Motion for Summary Judgment is DENIED. Judgment for plaintiff is GRANTED with regard to rent for the holdover period, a ten percent increase, and only those utilities for which plaintiff provided documentation. Accordingly, the Clerk is directed to enter judgment for plaintiff in the amount of $83,645.59 ($75,600 for rent, $7,560 as a ten percent increase, and $485.59 for utilities), plus interest pursuant to the CDA.

No costs.

IT IS SO ORDERED.

_____
**BOHDAN A. FUTEY**
**Judge**